**The Turley & Mara Law Firm, APLC**
William Turley, Esq. (SBN 122408)
bturley@turleylawfirm.com
David Mara, Esq. (SBN 230498)
dmara@turleylawfirm.com
Jill Vecchi, Esq. (SBN 299333)
jvecchi@turleylawfirm.com
7428 Trade Street
San Diego, California 92121
Telephone:   (619) 234 2833
Facsimile:   (619) 234 4048

Attorneys for Plaintiff
TIM EURE on behalf of himself, all
others similarly situated, and on behalf
of the general public

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM EURE, on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>RYDER INTEGRATED LOGISTICS, INC., a corporation; RYDER DEDICATED LOGISTICS, INC., a corporation, and DOES 1-100, inclusive,<br><br>Defendant. | Case No.:  16-cv-00324-MCE-AC<br><br>[Assigned For All Purposes The Honorable Morrison C. England Jr.]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: November 15, 2018<br>Time: 11:00 a.m.<br>Judge: Hon. Morrison C. England<br>Courtroom: 7<br><br>Action Filed: April 20, 2015<br>Action Removed: February 17, 2016 |

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 15, 2018, at 11:00 a.m. or as soon thereafter as the matter can be heard in Courtroom No. 7 of the above entitled courthouse located at 501 I Street, Sacramento, California 95814, Plaintiff Tim Eure (hereinafter "Plaintiff") will move this Court for an Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement. Defendants Ryder Integrated Logistics, Inc. and Ryder Dedicated Logistics, Inc. (hereinafter "Defendants" or "Ryder") do not oppose this Motion.

This motion is based upon this notice, the accompanying Memorandum of Points and Authorities filed herewith; the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement; the filings on record in this case; and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: November 1, 2018          **THE TURLEY & MARA LAW FIRM, APLC**

By: /s/ *Jill Vecchi*
    William Turley, Esq.
    David Mara, Esq.
    Jill Vecchi, Esq.
    Attorneys for Plaintiffs

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.        INTRODUCTION..........................................................................................1

II.       SUMMARY OF SETTLEMENT....................................................................3

III.      THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED

TO        ..............................................................................................................4

    A.   DISSEMINATION OF CLASS NOTICES ....................................................4

    B.   NO OBJECTIONS AND ONLY ONE VALID REQUEST FOR EXCLUSION HAS BEEN

       RECEIVED....................................................................................................4

    C.   CHALLENGES TO EMPLOYMENT HISTORY ............................................5

IV.       DISCUSSION ...............................................................................................5

    A.   THE SETTLEMENT MEETS THE STANDARDS GOVERNING FINAL APPROVAL ........5

       1.    Settlement was Reached Through Arm's-Length Negotiations .................6

       2.    In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935 (9th

       Cir. 2001), Factors Are Not Present Here ............................................7

       3.    The Settlement is Fair ...................................................................8

    B.   SUFFICIENT DISCOVERY AND INVESTIGATION HAS OCCURRED .........................11

    C.   CLASS COUNSEL HAVE EXTENSIVE EXPERIENCE ACTING AS CLASS COUNSEL .11

    D.   THE CLASS MEMBERS' RESPONSE TO THE SETTLEMENT IS FURTHER EVIDENCE

       that the SETTLEMENT IS FAIR AND REASONABLE...........................................12

    E.   THE COURT SHOULD APPROVE OF THE SETTLEMENT ADMINISTRATION FEE.....12

V.        CONCLUSION ..........................................................................................13

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**CASES**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ...................................6

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)...................................5

*Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014) ............................................................................................................................11

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)..............................5, 6

*Heritage Bond Litigation*, 2005 WL 1594403.................................................................5

*In re Portal Software, Inc. Securities Litigation*, 2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201, at *16 (N.D. Cal. 2007). .......................................................................11

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).....................................................5

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).......................................6

*Lane v. Facebook, Inc.*, 2010 WL 9013059, *5 (N.D. Cal. March 17, 2010).............10

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)......................8

*Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014)..10

*MRV Communs., Inc. Derivative Litig*., 2013 WL 2897874, *2 (C.D. Cal. June 6, 2013) ...........................................................................................................................10

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982) ...................................................................................8

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..............................6

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*., 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013) ...........11

**STATUTES**

Federal Rule of Civil Procedure 23 .................................................................................4

## I.    INTRODUCTION

This motion seeks final approval of the non-reversionary $300,000 proposed wage and hour class action settlement by Plaintiff Tim Eure (hereinafter "Plaintiff"). Plaintiff filed this wage and hour class action against Defendants Ryder Integrated Logistics, Inc., and Ryder Dedicated Logistics, Inc. (hereinafter "Ryder") alleging that Ryder violated California labor laws. Plaintiff brought this class action on behalf of himself and all currently and formerly employed hourly drivers of Ryder in the state of California from April 20, 2011 through July 30, 2018 (the date preliminary approval was granted). In response to the Class Notice, no objections and only one valid request for exclusion[1] has been received by the Settlement Administrator from Class Members. **Therefore, 100% of the settlement funds will be paid out to pay Participating Class Members[2] as there is no reversion to the Defendants and 99.93% of all Class Members are participating in the settlement since there are only one valid request for exclusion. There are no objections to the settlement.** The proposed settlement of $300,000 is projected to pay Participating Class Members an average estimated payment of $120.56, with the highest settlement share estimated at $512.72, less employee taxes for the settlement share that is devoted to wages**.**[3]

On July 30, 2018, this Court preliminarily approved the settlement of this wage and hour class action against Defendants. Plaintiff, a former non-exempt driver of Defendants, filed this wage and hour class action alleging that Defendants violated California labor laws. The Parties have negotiated a settlement of class claims in the Gross Settlement Amount ("GSA") of $300,000, the terms of which were preliminarily

---

[1] This one (1) valid request for exclusion represents 0.06% of the Settlement Class.

[2] Participating Class Members are all Class Members who do not submit a valid, timely and final Request for Exclusion to the Settlement Administrator.

[3] Declaration of Sofia Munoz of CPT Group, Inc. in Support of Motion for Final Approval of Class Action Settlement ("Munoz Decl.") ¶ 13. It should be noted that CPT Group, Inc. calculated these numbers based upon the estimated $20,000 in litigation costs, and these numbers will increase once the reduction in costs is calculated into the Net Settlement Amount.

approved by this Court and are subject to and contingent upon this Court's final approval. As part of its July 30, 2018 preliminary approval order, the Court conditionally certified, for settlement purposes only, the following Class: "All individuals who are or were employed by Defendant in California as drivers who were paid exclusively on an hourly basis at any time between April 20, 2011 and the date of preliminary approval." Dkt. # 31. It is requested this Court grant final approval of this settlement, because after analyzing the strengths and vulnerabilities of the Class' claims along-side Defendants' potential liability exposure, this proposed non-reversionary settlement of $300,000 is fair, reasonable, and adequate.

Plaintiffs are pleased to inform the Court that to date: (1) 1,494[4] Class Members were mailed a Notice of Class Action Settlement ("Class Notice"); (2) of the Class Notices mailed nine have been returned as completely undeliverable;[5] (3) there have been no objections to the settlement; and (4) there has been one valid request for exclusion from the settlement. The response of the Class Members supports the Court's finding that the Settlement is fair, reasonable, and adequate. This is especially true taking into consideration that there are three prior settlements which released some of the claims being brought by Plaintiff here: *Carranza v. Scully Distribution Services, Inc.*; *Swain v. Ryder Integrated Logistics, Inc.* and *Zamora v. Ryder Integrated Logistics, Inc.*

For the reasons that follow, it is respectfully requested the Court grant this motion and find the settlement to be fair, reasonable, and adequate.

/ / /

---

[4] Since the Parties filed their motion for preliminary approval on July 20, 2017, an additional approximately 722 non-exempt hourly paid drivers began working for Defendant before the end of the Class Period on July 30, 2018. It should be noted that all Class Members were mailed Class Notices and only one Class Member submitted a valid request for exclusion and no Class Members objected to the settlement. In addition, these additional Class Members will not have extensive work weeks since they only worked for Defendants for approximately one year of the Class Period.

[5] These nine undeliverable Class Notices represent 0.6% of the Class Members.

## II.   SUMMARY OF SETTLEMENT

As described in the motion for Preliminary Approval, and stated in the settlement agreement, which is attached as **Exhibit 1** to the Declaration of William Turley, Esq., in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Turley Decl."), the basic Settlement terms are as follows: Under the proposed Settlement, Defendant shall pay $300,000. This Gross Settlement Amount ("GSA") includes: (1) settlement administration costs of $20,000;[6] (2) Class Representative Enhancement Award and Release Payment not to exceed $5,000 to the named Plaintiff; (3) attorneys' fees not to exceed $75,000 (25% of the GSA); and (4) costs of $11,985.24 (originally estimated not to exceed $20,000). All of these payments are subject to the Court's approval.

After the above amounts are subtracted from the GSA, the remaining portion of the GSA – referred to as the Net Settlement Amount (NSA) – shall be available for distribution to Class Members. After subtracting the above amounts, the NSA available for individual Settlement Payments is approximately $188,014.76.

Each Settlement Class Member will receive a proportionate share of the NSA that shall be determined based on the number of Qualifying Workweeks[7] during which that Participating Class Member was employed during the Class Period. The NSA shall be divided by the total number of Qualifying Workweeks for all Participating Class Members during the Class Period. The result of this division shall yield a Settlement Payment Rate (SPR). The gross amount of each Participating Class Member's Settlement Payment shall be calculated by multiplying the number of Qualifying Workweeks the Participating Class Member was employed during the Class Period by the SPR. Governmentally-required employee tax withholdings shall be deducted from

---

[6] Munoz Decl. ¶ 15.

[7] Qualifying Workweeks mean the total number of calendar weeks that each Class Member was employed by Defendant during the Class Period.

that portion of each Settlement Payment allocated as wages. *See* **Exhibit 1** attached to the Turley Decl. at ¶ 51.

As the will be discussed, the settlement has been a resounding success, with no objections to the settlement submitted by Class Members and only one valid request for exclusion submitted. The class response and settlement shares to class members further demonstrate the settlement being fair, reasonable and adequate.

## III.    THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

### A.    Dissemination of Class Notices

Preliminary Approval was granted on July 30, 2018. At that time, CPT Group, Inc. ("CPT") was appointed by the Court as the Settlement Administrator. CPT has complied with this Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail. The Class Notices were mailed to 1,494 Class Members on August 29, 2018. Munoz Decl. ¶¶ 4, 6. CPT performed a Skip Trace on the returned Class Notices without forwarding addresses to locate new addresses. Munoz Decl. at ¶ 7. CPT re-mailed 72 Class Notices because: (1) CPT received a forwarding address; (2) CPT found an updated address through skip tracing; or (3) a Class Member requested that their notice be re-mailed. Munoz Decl. at ¶ 8. Nine Class Notices were ultimately deemed undeliverable.[8] Munoz Decl. at ¶ 8. In addition, throughout the notice process CPT has operated a toll-free telephone number for Class Members to call with inquiries concerning the settlement. Munoz Decl. ¶ 2.

### B.    No Objections and Only One Valid Request for Exclusion Has Been Received

The deadline to submit an objection to the settlement or a request for exclusion from the settlement was October 13, 2018. No objections have been filed with the Court or submitted to CPT and only one valid request for exclusion from the settlement has been received by CPT. Munoz Decl. ¶¶ 9, 10. This one valid request for exclusion

---

[8] These nine undeliverable Class Notices represent 0.6% of the Class Members.

represents 0.06% of the Class Members. Therefore, under the settlement, 1,493 Participating Class Members will receive a Settlement Payment. Munoz Decl. ¶ 12.

### C.   Challenges to Employment History

There are no outstanding disputes submitted by Class Members challenging the the number of workweeks that they are entitled to under the settlement. Munoz Decl. ¶ 11.

## IV.   DISCUSSION

### A.   The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23 (e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors:  the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendants' pay structures and wage and hour policies, which culminated in the parties reaching an agreement to settle at an arm's length mediation. The settlement amount takes into consideration the prior settlements which cover some of the claims brought by Plaintiff here, the significant risks with regard to the certifiability of Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### 1.    Settlement was Reached Through Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); se*e also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

In September of 2015, the Parties began settlement negotiations. These discussions continued unsuccessfully until the Parties decided to attend mediation. On November 30, 2016, the Parties engaged in an unsuccessful private mediation with experienced mediator Hunter Hughes. The Parties continued settlement discussions after mediation. On December 13, 2016, the Parties reached an agreement on the key terms of a settlement. Though cordial and professional, the settlement negotiations were, at all times, adversarial and non-collusive in nature. Turley Decl. ¶ 3.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 2.    *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This Settlement passes the *Bluetooth* test. The NSA is nearly two and a half times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the GSA.[9] Additionally, although the settlement agreement states that Defendants will not object to attorney fees up to 25% of the GSA, any amount requested by Class Counsel and not awarded shall become part of the NSA and be available for distribution to Class Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

/ / /

/ / /

---

[9] Class Counsel is requesting $75,000 (25% of the GSA). The NSA is approximately $188,014.76. $188,014.76 divided by 2.5 equals $75,205.90.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 3.    The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

The liability questions in this case touched on a wide expanse of California's wage and hour laws, many of which are subject to an ever-changing legal landscape, as appellate cases continually issue and refine the analysis. For instance, Plaintiffs' claims challenged Defendants' policies and practices with respect to meal and rest periods and providing "duty-free" breaks to non-exempt employees. Plaintiff contends – and Defendants vigorously dispute – that meal and rest periods are not duty-free because

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

drivers must always keep their phones on and make themselves available to answer calls from Defendants. Plaintiff asserts that this duty does not abate during meal and rest periods, and due to this policy, drivers are not able to go anywhere during their breaks that would prevent them from hearing their phone and being able to answer it. These areas of law are subject to frequent refinement through appellate decisions, especially due to the Supreme Court's decision in *Brinker v. Superior Court* and the voluminous progeny of appellate cases produced in its wake. Just from a legal standpoint, Plaintiff's liability claims demanded vigilance to the ever-changing legal landscape and an expertise on how the evolving case law interacted with the issues and causes herein.

Further, Plaintiff contends – and Defendants vigorously dispute – that despite their written meal and rest period policies, Defendants create incentives for drivers to forgo the taking of meal and rest periods. Plaintiff contends that Defendants expect drivers to complete their routes within extremely rigid timelines. Plaintiff further asserts that drivers' pay is inextricably tied to how quickly and efficiently they complete their routes within Defendants' expected time frames. Plaintiff alleges that to keep their jobs and not be disciplined for failing to make route times, drivers skip these breaks.

Defendants deny the allegations of this class action in their entirety, deny any liability or wrongdoing associated with the claims alleged in this action, and further deny that, for any purpose other than settling this action, this matter is appropriate for class treatment. Defendants further contend that they have complied at all times with all applicable California laws, including the *California Labor Code*, the applicable California Wage Order(s), and the Unfair Competition Law.

Defendants deny Plaintiff's theories of liability and contend that they provide their drivers with timely, duty-free meal and rest periods, and that drivers can use meal and rest period time for their own purposes and, therefore, do not owe drivers any meal period premiums or overtime wages. Defendants contend that their compliant meal and rest period policies advise drivers of their right to take meal and rest periods and drivers were required to follow those policies and report to Defendants if they were prevented

in any way from taking any rest or meal period to which they were entitled. Defendants contend that no policy, written or unwritten, created any incentives for drivers to forgo the taking of meal and rest periods.  Defendants further contend that there was no policy that required drivers to carry or answer their phones during their meal or rest periods. Defendants further allege that the only companywide policy that can be established here is one that is fully compliant with applicable law. Defendants, thus, contend that Plaintiff's theories of liability for meal and rest periods, require them to police their employees to take meal and rest periods, an obligation which *Brinker* expressly rejected as part of the duty to provide meal and rest periods under the *California Labor Code*. *Brinker, supra*, 53 Cal.4th at 1041 ("the employer is not obligated to police meal breaks and ensure no work thereafter is performed."). Nonetheless, Defendants contend that they went above and beyond the law by making significant efforts to ensure that their drivers took meal and rest breaks.

This settlement represents a well-crafted compromise of the divergent positions of the Parties that provides substantial benefits for the Class. Each side evaluated the strengths and weaknesses of their case and independently concluded that this settlement represents a responsible means of addressing Plaintiff's claims and Defendants' defenses.

Another factor considered by some courts in approving a settlement is the complexity, expense and likely duration of the litigation. *Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014); *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, *2 (C.D. Cal. June 6, 2013). In applying this factor, a court should weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, 2010 WL 9013059, *5 (N.D. Cal. March 17, 2010).  Here, litigating the case through to trial would have been expensive, required numerous hours of work, involved substantial risk, and would not have been fully resolved for years.  In contrast,

the proposed settlement provides significant and certain compensation that is available now as opposed to potentially and hypothetically sometime in the distant future.

Finally, employment cases (including wage and hour cases) can be expensive and time-consuming to prosecute. The alternative to a class settlement – i.e., individual litigation – would tax private and judicial resources over a period of years.  As such, the settlement in this case is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits" and thus, provides another reason to approve the Settlement.  *Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*., 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg § 11.41 at 87-89.

### B.    Sufficient Discovery and Investigation Has Occurred

After this case was filed, the Parties agreed to try to informally resolve this case. This was in part due to the fact that there are three prior settlements which released the certain claims being brought by Plaintiff: *Carranza v. Scully Distribution Services, Inc*.; *Swain v. Ryder Integrated Logistics, Inc.* and *Zamora v. Ryder Integrated Logistics, Inc.* The Parties agreed to engage in informal discovery aimed at accomplishing this goal. Accordingly, Defendants produced information and documents to Plaintiff. These documents included trip sheets and pay records. In addition, Plaintiff received information relating to the size and scope of the class. Plaintiff was also in possession of Defendants' wage and hour policies. Further, Plaintiff conducted interviews with putative class members regarding their experiences working for Defendants. This discovery and investigation facilitated settlement discussions. Turley Decl. ¶ 4.

### C.    Class Counsel Have Extensive Experience Acting as Class Counsel

Class counsel's experience in complex class action matters is extensive. Indeed, class counsel from the Turley & Mara Law Firm, APLC were class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1004. Turley Decl. ¶ 5. Plaintiff's counsel has prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. Turley Decl. ¶ 6. This experience instructed Plaintiff's counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement.

### D. The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement and only one Class Member validly requested to be excluded from the settlement. Munoz Decl. ¶¶ 9, 10. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement.

### E. The Court Should Approve of the Settlement Administration Fee

The Parties agreed to hire CPT to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. CPT was responsible for mailing the Class Notice to Class Members, obtaining better addresses for undeliverable Class Notices, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. Munoz Decl. ¶ 2. Following the grant of final approval, CPT will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, draft and send letters together with the individual Settlement Shares to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as

described in the settlement agreement. Munoz Decl. ¶ 2. CPT's fee of $20,000 for services rendered and to be rendered is fair and reasonable and should be granted. Munoz Decl. ¶ 15.

## V.    CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the settlement fair, reasonable, and adequate and grant this Final Approval Motion. Plaintiff further requests that the Court enter final judgment.

Dated: November 1, 2018               **THE TURLEY & MARA LAW FIRM, APLC**


                                      By: /s/ *Jill Vecchi*
                                          William Turley, Esq.
                                          David Mara, Esq.
                                          Jill Vecchi, Esq.
                                          Attorneys for Plaintiff

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT